**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LINDA LEWIS,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **No. 3:10-CV-2578-N-BH** |
| | § | |
| **CITY OF WAXAHACHIE, et al.,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this action has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, Plaintiff's claims should be **DISMISSED**.

## I. BACKGROUND[1]

Plaintiff sues Judge Gene Calvert, Judge Don Metcalf, District Attorney Joe F. Grubbs (DA), Sheriff Johnny Brown (Sheriff), and Ellis County Clerk Cindy Polley, individually and in their official capacities, as well as Ellis County (County) and the City of Waxahachie (City) under 42 U.S.C. § 1983 for alleged violation of her constitutional rights during and after a state court contempt proceeding that resulted in her being sentenced to 180 days of confinement. (doc. 29 at 1-2.) Plaintiff also asserts various state law claims, including intentional infliction of emotional distress, defamation of character, libel, slander, fraud, and malicious prosecution, against these defendants and against attorney Rodney Ramsey, attorney Kendall L. Drew, and Officer Joel Berry, in their individual and official capacities. She seeks expungement of her record, reversal of her convictions for disorderly conduct and resisting arrest, and $10,000,000 in "punitive damages." (doc. 29; doc. 10 at 17; doc. 25 at 4.) No process has been issued in this case pending screening.

[1] The background facts are taken from Plaintiff's second amended complaint (doc. 29) and her answers to the Court's questionnaires (docs. 10, 25). Plaintiff's answers to the questionnaires constitute an amendment to her complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

## II. PRELIMINARY SCREENING

Because Plaintiff is proceeding *in forma pauperis*, her complaint is subject to judicial screening under 28 U.S.C. § 1915(e)(2). That statute provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III. SECTION 1983

Plaintiff seeks monetary damages for alleged constitutional violations. Although she does not expressly state a basis for her claims, 42 U.S.C. § 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id*. To state a claim under § 1983, Plaintiff must allege facts that show (1) she has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A. Claim for Habeas Relief**

Plaintiff was found in contempt of court and was found guilty of disorderly conduct and resisting arrest. She states that she is challenging the validity of her conviction. (*See* doc. 25 at 3). Habeas relief is an inappropriate remedy in a § 1983 action, however. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). A prisoner cannot challenge the fact or duration of confinement. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)). She may only do so within the exclusive scope of habeas corpus. *See Preiser*, 411 U.S. at 487. Plaintiff may only obtain declaratory or monetary relief in this § 1983 action, so she fails to state a cause of action upon which relief may be granted on her claim requesting that her conviction and judgment of contempt be overturned.[2]

**B. Claim for Expungement**

Plaintiff also seeks to have her state court record, including her state court convictions and her civil contempt judgment, expunged from her record.

Under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), when a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, a complaint must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck* applies to claims seeking declaratory and injunctive relief, as well

---

[2] A federal district court would only have jurisdiction to entertain a habeas petition filed by Plaintiff if she was "in custody" under the conviction or sentence she is challenging at the time the petition is filed. *See* 28 U.S.C. §§ 2241(c)(3), 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). While this does not require that a habeas petitioner be physically confined, she must still be under the conditions of an unexpired sentence to be considered "in custody." *Maleng*, 490 U.S. at 491.

as damages. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 805 (N.D. Tex. 2005) (accepting recommendation of Mag. J.) (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Clarke v. Stalder*, 154 F.3d 186, 190-91 (5th Cir. 1998)).

Under Texas state law, a person is entitled to have both felony and misdemeanor records expunged if: 1) she is tried and acquitted; 2) she was convicted and subsequently pardoned or granted relief based on actual innocence; or 3) she has been released from confinement and the charge did not result in a final conviction, provided certain specific conditions are met. *See* TEX. CODE CRIM. PROC. ANN. art. 55.01 (West 2011). By seeking to have her convictions and civil contempt judgment expunged Plaintiff is therefore, in effect, calling into question the validity of her convictions and sentence. Because *Heck* applies, she must demonstrate that her allegedly improper incarceration and convictions have been reversed or invalidated. She has failed to make the requisite showing. Accordingly, her request for expungement should be dismissed as *Heck* barred.[3]

## C. Claims against Judges

### 1. *Official Capacity Claims*

Plaintiff sues Judges Calvert and Metcalf for alleged violations of her constitutional rights in their official capacities.

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

---

[3] Even if Plaintiff's request for expungement not barred by *Heck*, expungement is not the type of relief available under § 1983, because the right to expunge state records is not a federal constitutional right. *Rodgers v. State of Texas*, 2004 WL 764946, slip op. at *2 (N.D. Tex. April 7, 2004) *citing Eutzy v. Tesar*, 880 F.2d 1010, 1011 (8th Cir. 1989), *Duke v. White*, 616 F.2d 955, 956 (6th Cir. 1980). Even if available in a § 1983 action, however, lower federal courts may not order the expungement of state convictions or public records absent some "special circumstance". *See Cavett v. Ellis*, 578 F.2d 567, 568 (5th Cir. 1978), *Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir. 1972). Plaintiff has alleged no special circumstance that would warrant expungement of her state records.

Plaintiff's suit against Texas state judges in their official capacities is a suit against the State of Texas. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Communic'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Judge Calvert and Judge Metcalf have Eleventh Amendment immunity for claims asserted against them in their official capacities. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Therefore, Plaintiff's official capacity § 1983 claims against them should be dismissed.

**2. *Individual Capacity Claims***

Plaintiff also sues Judges Calvert and Metcalf under § 1983 in their individual capacities. She seeks monetary damages from Judge Calvert for violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. She also seeks monetary damages against Judge Metcalf for violations of the First, Fifth and Fourteenth Amendments. (*See* doc. 29; doc. 10 at 7-8; doc. 10-1 at 23). She claims that Judge Calvert refused to hear defense

evidence; refused to recuse himself in a timely manner; failed to follow proper courtroom procedures; prevented her from offering evidence; acted outside his authority by excessively punishing her; had her arrested without probable cause; prevented her from testifying for another defendant in the Ellis County Jail under the judgment of contempt against Plaintiff; and deprived her of "life, liberty, and happiness" by sentencing her to 180 days with no bond. (doc. 10 at 7-8). She contends that Judge Metcalf did not hear any motions on March 18, 2010 and April 1, 2010, and he denied her right to free speech on these same dates. (doc.10-1 at 23).

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune from suit for damages resulting from any judicial act unless performed in "the clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Allegations of bad faith or malice do not overcome judicial immunity. *Mireles*, 502 U.S. at 11. Because Plaintiff has not alleged that either judge acted without jurisdiction, and her complaint is based solely on acts taken in their role as judges, the judges are absolutely immune from the claims for monetary damages asserted against them. *See Nixon*, 457 U.S. at 745–46. Plaintiff's § 1983 claims against the judges in their individual capacities should be dismissed.

**D. <u>Claims against County Employees</u>**

***1. County Clerk***

Plaintiff sues County Clerk Cindy Polley in her individual capacity for monetary damages under § 1983, alleging that Polley "denied" several motions, did not set court dates for other motions, and gave a notice of appeal to the district court rather than forwarding it to the court of

appeals. (doc. 10 at 1; doc. 29 at 2).[4]

Court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981). They "enjoy[] only qualified immunity[, however,] for those routine duties not explicitly commanded by a court decree or by the judge's instructions." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). A court clerk has absolute immunity when her actions are prescribed by court rules. *Florence v. Buchmeyer*, 500 F.Supp.2d 618, 643 (N.D. Tex. 2007). Plaintiff has alleged that certain motions were denied or were not set for a hearing and that a notice of appeal was filed with the state district judge. Because Plaintiff has not alleged that these actions were not taken under court order, according to court rules, or at a judge's discretion, Polley has absolute immunity for these actions. *See Small v. Dallas County Tex.*, 170 Fed. Appx. 943, 944 (5th Cir. April 10, 2006) (holding that the clerk of a state district court was entitled to absolute immunity absent allegation that any of his actions were not taken under court order or at judge's discretion). Plaintiff's § 1983 claims against Polley should be dismissed.

**2. *DA***

Plaintiff sues the DA in his individual capacity for violations of her rights under the Fifth, Sixth, and Fourteenth Amendments. (doc. 29; doc. 10-1 at 26.) She alleges he denied her due process, tried "to charge [her] with double jeopardy charges," and denied her the right to cross-examine witnesses before adding an additional charge against her. (doc. 29 at 1; doc. 10-1 at 26.)

Prosecutors enjoy absolute immunity to initiate and pursue criminal prosecutions. *See Imbler*

---

[4] The record is unclear whether this notice of appeal was an improper and unnecessary appeal of the contempt judgment or an appeal from a denial of a writ of habeas corpus. *See Ex parte Lewis*, 2010 WL 4878871 (Tex. App.–Waco Nov. 24, 2010); *Lewis v. State*, 2010 WL 522865 (Tex. App.–Waco Feb. 10, 2010); doc. 10 at 2-3; 10-2 at 11.

*v. Pachtman*, 424 U.S. 409, 430-31 (1976). While the Supreme Court has recognized that a prosecutor has only qualified immunity with respect to his or her administrative and investigative duties, *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993), Plaintiff in this case has made no allegation that the DA acted other than in his adjudicative role as prosecutor. To the contrary, she attempts to sue him for the manner under which she was indicted and tried. These are actions taken by a prosecutor in his role as an advocate for the State. *Id*. at 273. Furthermore, a prosecutor is entitled to absolute immunity for acts taken to initiate prosecution even against allegations that he acted "maliciously, wantonly, or negligently." *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987), *citing Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985).

All of the acts Plaintiff complains of were taken during the course and scope of the DA's duties as a prosecutor; accordingly, he is entitled to immunity. *See Imbler*, 424 U.S. at 423. Plaintiff's § 1983 claims against him should be dismissed.

**3. *Sheriff***

Plaintiff asserts claims against the Sheriff under § 1983 for violations of the Fifth, Eighth, and Fourteenth Amendments. (doc. 29; doc. 10-2 at 12, doc. 10-4 at 15.) She contends that: 1) he would not allow her to sign motions *pro se*; 2) he did not submit certain legal documentation to his insurance company, and lied to his insurance company; 2) she was falsely accused of destruction of property, and he did not give her a hearing; 3) she was not allowed medicine on several occasions; 4) her request to move after being threatened on one occasion was denied; 5) she was placed on lock down for no reason for fourteen days; 6) on one day her cell was flooded and she had to stand on table tops; and 7) he denied her request to speak to rank on several occasions. (doc. 10-2 at 12).

Supervisory officials cannot be held liable for the unconstitutional actions of their

subordinates based on any theory of vicarious or respondeat superior liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). The acts of a subordinate "trigger no individual § 1983 liability." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). There must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Id.* A plaintiff cannot make generalized allegations. *Howard v. Fortenberry*, 723 F.2d 1206 (5th Cir.1984).

**a. Legal Documents**

As support for her claim that the Sheriff did not permit her to sign legal documents *pro se*, Plaintiff has submitted copies of motions, file-marked by the state court on March 24, 2010, as well as a copy of a letter written by her niece alleging that the Sheriff told her on April 8, 2010, that she would have to mail legal documents to Plaintiff for signature. (doc. 10-2 at 13-19). While plaintiff has alleged personal involvement by the Sheriff on this issue, she has not alleged that his actions constituted a constitutional violation. Plaintiff was not denied the right to sign legal documents, only to hand-delivery of the documents for signature. A prisoner has a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In order to prevail on a claim for denial of access to the courts, a plaintiff must demonstrate that she has suffered actual harm by showing that her ability to pursue a nonfrivolous legal claim was hindered by a defendant's actions. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996). Even assuming that Plaintiff wished to raise nonfrivolous claims, she has not alleged facts to support a claim that requiring legal motions

be mailed to her for signature hindered her ability to file them. She was, in fact, able to file her motions, since they are file-marked. She has not alleged a violation of her constitutional rights.

**b. Insurance Claim**

As support for her claim that the Sheriff did not submit certain documents to his insurance company and lied to the insurance company, Plaintiff submits a letter from an insurance company denying a claim she made against the Sheriff's bond over her arrest for contempt of court and the conditions of her confinement. She also has submitted an affidavit releasing her medical records to the company because the Sheriff would not forward them without a release. (doc. 10-2 at 21-23). Plaintiff disagrees with the Sheriff's denial of her claims and with the refusal to forward her medical records to the insurance company. As a prerequisite to maintaining a § 1983 claim, a plaintiff must allege that a defendant violated a right of the plaintiff that is protected by either the federal constitution or federal laws. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Again, Plaintiff has alleged personal involvement by the Sheriff, but she has not alleged that his actions resulted in any constitutional violation.

**c. Hearing, Lockdown, Requests to Move and to Speak to Officers**

Plaintiff sues the Sheriff because she allegedly did not have a hearing when she was falsely accused of destroying jail property, placed on lock down for no reason, and denied requests to move and to speak to rank officers. Plaintiff's filing reflects that she was advised on May 14, 2010, by a detention officer, that she would have a hearing within ten days regarding a destruction of property allegation, that she was told that Captain Ogden made the decision to lock down her area at one point during her incarceration, and that on May 29, 2010, she filled out an inmate request form asking to speak to the Sheriff, a captain, a lieutenant, or a sergeant. (doc. 10-2 at 24; 10-3 at 5, 7).

None of her attachments reflect that the Sheriff had any personal involvement in these matters. *See Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d at 314 (no individual liability under § 1983 where complaint alleges no personal involvement by the defendant in violating plaintiff's rights by working him beyond his capabilities in prison).

To the extent that Plaintiff complains that the Sheriff did not adequately respond to any of her complaints, a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability. *See Amir-Sharif v. Valdez*, 2007 WL 1791266, slip op. at *2 (N.D. Tex. June 6, 2007) (holding that no liability under § 1983 had been alleged because a failure to take corrective action in response to a grievance does not rise to the level of personal involvement); *Praylor v. Partridge*, 2005 WL 1528690, slip op. at *2 (N.D. Tex. June 28, 2005) (same). Likewise, the Fifth Circuit has held that inmates do not have a constitutionally protected interest in having grievances resolved to their satisfaction. Therefore, there is no due process violation when an inmate complains that prison officials have allegedly failed to investigate her grievances or letters. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Mahogany v. Miller*, 252 Fed. Appx.593, 595 (5th Cir. Oct. 24, 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

**d. Flooded Cell, Medication**

Finally, Plaintiff sues the Sheriff because her cell flooded one day and because she was denied her blood pressure medicine. The Eighth Amendment requires prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Liability cannot attach, however, unless deliberate indifference on the part of the

official is established.  To establish deliberate indifference, one must show that a prison official knew of and disregarded a substantial risk to an inmate's health or safety. *Id*. at 828, 837.  The deliberate indifference standard is an "extremely high" one to meet.  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Plaintiff has not alleged that the Sheriff was deliberately indifferent to her health or safety by disregarding a substantial risk to her health and safety.

Plaintiff's allegation that the cell flooded one day, requiring her to stand on furniture, does not rise to deliberate indifference to her safety because it is not an allegation that the Sheriff knew of, and disregarded a *substantial* risk to her health or safety.  Likewise, Plaintiff has submitted copies of three inmate request forms that she submitted in January and February of 2010, regarding her blood pressure medication and pain medication.  All are initialed by someone in the jail indicating that the request was addressed.  One, dated January 19, 2010, indicates that her request to see a nurse about a "bottom bunk pass" and about her medication was denied.  One, dated February 12, 2010, indicates that Plaintiff's concern about her blood pressure and pain in her arm was "resolved."  One, dated February 8, 2010, in response to her statement that she needed to "get back on" her blood pressure medicine, indicates that Plaintiff was at that time being given the medicine Metoprolol for her blood pressure.  Even assuming the Sheriff knew about Plaintiff's blood pressure medication, she has not alleged that the Sheriff disregarded a substantial risk to her health.  Her concerns about her health and medication were addressed by jail staff.  While Plaintiff may disagree with how they were addressed, this is not an allegation of deliberate indifference on the Sheriff's part.  *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001) (disagreement with medical treatment alone cannot support a § 1983 claim).

Plaintiff's § 1983 claims against the Sheriff in his individual capacity should be denied.

**4. *Official Capacity Claims***

With regard to Plaintiff's § 1983 claims against the DA, the County Clerk, and the Sheriff in their official capacities, these are essentially claims against Ellis County. *See Graham*, 473 U.S. at 165. The claims against Ellis County are addressed below.

**E. <u>Municipal Claims</u>**

Plaintiff asserts claims under § 1983 against the City and County for violations of the Fifth, Eighth, and Fourteenth Amendments. (doc. 10-3 at 16, doc. 10-4 at 4, 15). She alleges that City and County employees took the "law in their own hands by doing whatever they see fit to do . . . . Not by following the Constitutional [l]aws but the laws of themselves"; that the City and County allowed the grand jury to add a "fictitious charge" against her; that the City and County did not investigate the "fictitious" contempt charge and allowed her to "sit in jail" for 180 days without due process; and that they are liable for "aggravated perjury, severe emotional distress, negligence, causation (sic), discrimination, defamation(,) pain and suffering of having to see [her] youngest daughter in jail for crimes she did not commit, across the hall from [her] crying daily." (doc. 10-3 at 16, doc. 10-4 at 1). Through her official capacity claims, Plaintiff also sues the County for actions taken by the state district judges, the county clerk, the prosecutor, and the sheriff.

Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of respondeat superior. 42 U.S.C.A. § 1983*; see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. N.Y. Dep't of Soc. Servs*., 436 U.S. 658, 691–95 (1978).[5] Plaintiffs who seek to impose liability on local governments under § 1983 must prove that

[5]Municipal liability analysis also applies to Texas counties. *See Prince v. Curry*, No. 10-10294, 2011 WL 1659493, at * 3 n. 3 (5th Cir. Apr. 28, 2011); *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998).

action pursuant to official municipal policy caused their injury. *Monell*, 436 U.S. at 691–95; *McClure v. Biesenbach*, 355 F. App'x 800, 803-04 (5th Cir. 2009). Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691–95.

Plaintiff does not allege that a specific policy was officially adopted and promulgated by the City's or County's lawmaking officers or by an official who had been delegated law-making authority. She also fails to allege a constitutional violation for which the moving force was the policy. Finally, she has failed to allege any persistent and widespread practice that caused her injury *See Monell*, 436 U.S. at 691–95. . She has therefore failed to state a claim for municipal liability under § 1983, and her § 1983 claims against the City and County (and county employees in their official capacities) should be dismissed.

**IV. STATE LAW CLAIMS**

Because all of Plaintiff's § 1983 claims should be dismissed, only her following state-law claims remain pending: 1) intentional infliction of emotional distress by all the defendants; 2) malicious prosecution by Judge Calvert, the Sheriff, the DA, the City, and the County; 3) defamation by Judge Calvert, the DA, attorneys Rodney Ramsey and Kendall L. Drew, and Officer Joel Berry; and 4) fraud by Judge Calvert and the DA. (doc. 10 at 1, 7-8; doc. 10-1 at 23, 26; doc. 10-2 at 12; doc. 10-3 at 16; doc. 10-4 at 1, 15; doc. 25 at 1-3; doc. 29 at 2).

Federal courts may exercise supplemental jurisdiction over state claims in any civil action in which the court has original jurisdiction. 28 U.S.C. § 1367(a). However, whether to exercise such jurisdiction after dismissing the underlying federal claims is a matter left to the sound discretion of

the Court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000). When the Court dismisses the federal claims at a preliminary stage of litigation, judicial economy argues against the exercise of pendent or supplemental jurisdiction over state claims. *See LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986). Because Plaintiff's federal claims are subject to dismissal as frivolous, her state law claims should be dismissed without prejudice to pursuing them in state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).[6]

## V. RECOMMENDATION

All of Plaintiff's § 1983 claims against all defendants should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B). The Court should decline to exercise supplemental jurisdiction over her remaining state law claims, and these claims should be **DISMISSED** without prejudice to Plaintiff pursuing them in state court.

**SIGNED this 21st day of December, 2011.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

6 The various state statute of limitations on Plaintiff's state claims are tolled while her state claims were pending in federal court and for a period of thirty days after dismissal, unless state law provides for a longer tolling period. *See* 28 U.S.C. § 1367(d). Under Texas state law, the applicable statute of limitations on a claim is tolled between the filing date of an action in one court and the filing date of the same action in a different court if the claim or claims are dismissed because of a lack of jurisdiction *and* the second action is filed with sixty days of the dismissal. TEX. CIV. PRAC. & REM. CODE ANN. § 16.064(a) (West 1985); *see also Vale v. Ryan,* 809 S.W.2d 324, 327 (Tex. App.–Austin, 1991, no writ) (holding that § 16.064 tolls the Texas state statute of limitations on any state law claim dismissed by a federal court declining to exercise its supplemental jurisdiction).

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE